UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

HUNTER VALLES,

  Plaintiff,

   v.

DAVID PLEASANT and CLEVELAND-
CLIFFS STEEL, LLC,

  Defendant.

No. 1:22-cv-6484
Judge Franklin U. Valderrama

MEMORANDUM OPINION AND ORDER

  Plaintiff Hunter Valles (Valles) was injured following an explosion at a steel

production plant owned by Defendant Cleveland-Cliffs Steel LLC (Cleveland-Cliffs).

Valles filed this action in the Circuit Court of Cook County, Illinois, asserting seven

counts, including negligence and strict liability, against Cleveland-Cliffs and one

count of negligence against Defendant David Pleasant (Pleasant, collectively with

Cleveland-Cliffs, "Cleveland-Cliffs"),[1] a safety engineer at the plant. Cleveland-Cliffs

then removed this case to federal court arguing that there is diversity jurisdiction

under 28 U.S.C. § 1332 because there is complete diversity of citizenship between

Valles on one side, and Cleveland-Cliffs, on the other. As for Pleasant, who is an

Illinois resident and thereby destroys complete diversity, Cleveland-Cliffs argues

that Pleasant has been fraudulently joined in this lawsuit and his citizenship should

_____

[1]Although the Court refers to Defendants collectively as Cleveland-Cliffs, the Court uses
singular pronouns throughout this Opinion.

be disregarded in assessing diversity jurisdiction. Before the Court is Valles' Motion for Remand to the Circuit Court of Cook County, R. 9, Mot. Remand,[2] and Motion for Costs, Expenses, and Attorneys' Fees, R. 10, Mot. Fees. For the following reasons, the Court grants Valles' Motion for Remand and denies his Motion for Costs, Expenses, and Attorneys' Fees.

### Background[3]

Valles is a machine operator and employee for Metal Services LLC d/b/a Phoenix Services (Phoenix), R. 1-1, FAC ¶¶ 19, 21–22, a contractor at Cleveland-Cliffs' East Chicago, Indiana steel production plant (the Plant) that provides metal recovery and scrap processing for Cleveland-Cliffs, R. 1, Not. Removal ¶ 26. The previous owner of the Plant, ArcelorMittal, entered into a service contract with Phoenix in April 2009. *Id.* In 2020, Cleveland-Cliffs took over the Plant and the service contract with Phoenix from ArcelorMittal. *Id.* ¶ 22.

Employees and contractors at the Plant transport "molten slag" or steel byproduct, and "blow down" and/or "bottom wash" slag, which can be highly explosive. FAC ¶ 20. Under amendments to the service contract, Phoenix employees, like Valles, who operate pot carriers owned by Phoenix have access to Cleveland-Cliffs' staging

---

[2]Citations to the docket are indicated by "R." followed by the docket number or filing name, and, where necessary, a page or paragraph citation.

[3]In resolving a motion to remand, the Court "assumes the truth of the operative complaint's allegations at the time of removal, but also may consider facts set forth in the notice of removal." *Curry v. Boeing Co.*, 542 F. Supp. 3d 804, 808 (N.D. Ill. 2021) (citations omitted).

area. Not. Removal ¶¶ 28–32. These employees routinely pick up pots filled with molten slag from Cleveland-Cliffs' staging area and transport the pots to an area of the facility owned by Cleveland-Cliffs but leased by Phoenix (Leased Property). *Id.* ¶ 33. Pleasant is a safety engineer at the Plant. FAC ¶ 13. As a safety engineer, Pleasant was responsible for the operation, maintenance, and control of the Plant, which includes implementing safety standards and coordinating safety training for Phoenix employees. *Id.* ¶¶ 15–16, 19. Pleasant, as a safety engineer, knew or should have known that slag coming into contact with water could cause an explosion. *Id.* ¶ 23.

On March 3, 2022, Valles was injured after a pot filled with molten slag was deposited onto water that resulted in an explosion. FAC ¶¶ 24, 26–27. Valles, an Illinois resident, filed this lawsuit in the Circuit Court of Cook County, Illinois, asserting one count of negligence against Pleasant. R. 1-2. Valles subsequently filed an amended complaint adding five counts against Cleveland-Cliffs, namely negligence (Count II), strict liability (Count III), construction negligence (Count IV), Restatement (Second) § 343 liability (Count V), and premise liability (Count VI), and a negligence count against Pleasant (Count I), an Illinois resident. FAC ¶¶ 7–12. Cleveland-Cliffs filed a Notice of Removal, thereby removing the case from the Circuit Court of Cook County to this Court on the basis of diversity of citizenship, asserting that Valles fraudulently joined Pleasant to destroy diversity. Not. Removal ¶ 4, 14–15. Valles now moves to remand the case back to the Circuit Court of Cook County due to lack of subject matter jurisdiction. Mot. Remand.

3

**Legal Standard**

Federal courts are courts of limited jurisdiction. *Exxon Mobil Corp. v. Allapatthah Servs., Inc.*, 545 U.S. 546, 552 (2005). A case may only be brought before the federal court, as deemed by Congress, when such a cause of action arises under a federal question, 28 U.S.C. § 1331, or where there is diversity of citizenship and an amount-in-controversy exceeding $75,000, *id.* § 1332(a); *see Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746 (2019). Congress authorized federal courts to exercise diversity jurisdiction, in particular, to protect "those who might otherwise suffer from local prejudice against out-of-state parties." *Hertz v. Friend*, 559 U.S. 77, 85 (2010).

A defendant may remove to federal court any action filed in state court that could have originally been filed in federal court. 28 U.S.C. § 1441(a); *Tylka v. Gerber Prods. Co.*, 211 F.3d 445, 448 (7th Cir. 2000). "Removal based on diversity of citizenship under § 1332(a), however, is governed by the forum defendant rule" *Graff v. Leslie Hindman Auctioneers, Inc.*, 299 F. Supp. 3d 928, 932 (N.D. Ill. 2017). That is, "[a] civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title [diversity jurisdiction] may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). Put differently, the "forum defendant rule disallows federal removal premised on diversity in cases where the primary rationale for diversity jurisdiction—to protect defendants against presumed bias of local courts—is not a concern because at least one defendant is a citizen of the

4

forum state." *Morris v. Nuzzo*, 718 F.3d 660, 665 (7th Cir. 2013). "The party seeking removal has the burden of establishing federal jurisdiction." *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009). "Courts should interpret the removal statute narrowly and presume that the plaintiff may choose his or her forum." *Doe v. Allied–Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993).

Removal based on diversity jurisdiction requires that the parties be of diverse state citizenship and that the amount in controversy exceed $75,000. 28 U.S.C. § 1332(a). A removing defendant in a diversity case must also satisfy the requirements of 28 U.S.C. § 1441(b). Section 1441(b)(2) prohibits removal in diversity cases when one of the "parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." *Id.* § 1441(b)(2); *see also Graff*, 299 F. Supp. 3d at 932. At any time before final judgment, the court may remand a case for lack of subject matter jurisdiction. 28 U.S.C. § 1447(c).

## Analysis

Cleveland-Cliffs removed this case to federal court based on diversity jurisdiction, asserting that Valles' allegations against Pleasant were unfounded and constitute fraudulent joinder. Not. Removal ¶ 4. In his Motion to Remand, Valles argues that the Court lacks subject matter jurisdiction over this case because Pleasant is domiciled in Illinois, thereby defeating diversity jurisdiction, and all claims against Pleasant have a reasonable possibility of success in state court. Mot. Remand ¶ 9. The Court agrees with Valles and grants his Motion to Remand.

However, the Court denies Valles' Motion for Costs, Expenses, and Attorneys' Fees (Motion for Fees).

## I.    Cleveland-Cliffs' Citizenship

As an initial matter, Valles posits that Cleveland Cliffs, a limited liability company, may be a citizen of Illinois as opposed to Ohio, thereby destroying diversity[4] and warranting remand. Mot. Remand ¶¶ 69–71 ("[I]t is unclear whether even Cleveland-Cliffs is a diverse defendant."). "As the party seeking to invoke federal jurisdiction, . . . [Cleveland-Cliffs] bears the burden of demonstrating that removal is proper." *Boyd v. Phoenix Funding Corp.*, 366 F.3d 524, 529 (7th Cir. 2004) (cleaned up).[5]

Cleveland-Cliffs is a limited liability corporation (LLC). *See* Mot. Remand ¶ 69; Not. Removal ¶ 12. For diversity purposes, the citizenship of a limited liability company is "based on the citizenship of its members. If any of the LLC's members are citizens of the same state as the opposing party, then there is no complete diversity." *J.P. Morgan Sec. LLC v. Cresset Asst Mgmt., LLC*, 2021 WL 5918879, *3 (N.D. Ill. Dec. 15, 2021) (cleaned up). Determining the citizenship of an LLC poses a unique problem because unlike corporations which may have citizenship in one to two states,

---

[4]Defendants do not dispute that Plaintiff sufficiently pleads the $75,000 amount-in-controversy threshold.

[5]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

LLCs can have multiple citizenships among its members and some of its members may also be LLCs. *Calchi v. TopCo Assocs., LLC*, 2023 WL 3863355, *4 (N.D. Ill. June 7, 2023). Also complicating matters for plaintiffs is that in some states the members of the LLC need not be publicly identified. *Qin v. Deslongchamps*, 31 F.4th 576, 579 (7th Cir. 2022) (finding that "in the handful of states that allow it (among them Delaware), its members can be anonymous: an authorized third-party representative can register the LLC without disclosing the identities of the LLC's members").

Here, neither Valles' FAC, nor Motion to Remand, disclose the citizenship of the members of Cleveland-Cliffs, a limited liability company. No matter, because, as stated above, the party seeking to invoke the Court's federal subject matter jurisdiction—here, Cleveland-Cliffs—must establish the citizenship of each of the LLC's members. *Schur*, 577 F.3d at 758; *see also Rooflifters, LLC v. Nautilus Ins. Co.*, 2013 WL 3975382, at *4 (N.D. Ill. Aug. 1, 2013) (collecting cases finding that a removing defendant must identify the citizenship of an LLC in its notice of removal if the pleadings do not identify it). And Cleveland-Cliffs properly did so in its Notice of Removal. Supported by affidavit, Cleveland-Cliffs states it is an LLC with its single member, Cleveland-Cliffs Steel Holdings Inc., incorporated in Ohio. Not. Removal ¶ 12 ("[T]he sole member of Cleveland-Cliffs is Cleveland-Cliffs Steel Holdings, Inc., a corporation organized under the laws of the State of Ohio, with its principal place of business in Ohio. Therefore, Cleveland-Cliffs is a citizen of Ohio for purposes of establishing diversity jurisdiction."); *see id.*, Exh. C ¶ 3 ("Cleveland-Cliffs Steel LLC has a single member, Cleveland-Cliffs Steel Holdings Inc. Cleveland-Cliffs Steel

Holdings Inc. is a corporation organized under the laws of the State of Ohio. Cleveland-Cliffs Steel Holdings Inc. has its principal place of business in Ohio.").

The citizenship of a corporation is determined by the corporation's state(s) of incorporation and its principal place of business. *Calchi*, 2023 WL 3863355, at *4. Here, the unrebutted evidence demonstrates that Cleveland-Cliffs Steel, LLC is a citizen of Ohio, confirming complete diversity between Valles and Cleveland-Cliffs.

The Court having satisfied itself that there is complete diversity between Valles and Cleveland-Cliffs, now turns to the issue of fraudulent joinder as it relates to Pleasant.

## II. Fraudulent Joinder

"A plaintiff typically may choose its own forum but may not join a nondiverse defendant simply to destroy diversity jurisdiction. The 'fraudulent joinder doctrine' permits a district court considering removal to disregard . . . the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." *Schur*, 577 F.3d at 763 (cleaned up). "Despite the doctrine's name, actual fraud is not needed to successfully invoke fraudulent joinder." *Vaca v. Bridge Com. Real Est.-Illinois, LLC*, 2022 WL 2867098 at *2 (N.D. Ill. July 21, 2022) (cleaned up). The doctrine of fraudulent joinder "is designed to strike a reasonable balance among the policies to permit plaintiffs the tactical prerogatives to select the forum and the defendants they wish to sue, but not to reward abusive pleading by plaintiffs, and to protect the defendants' statutory right to remove." *Morris*, 718 F.3d at 666 (cleaned up).

8

To successfully claim that a plaintiff has fraudulently joined a party merely to destroy diversity, a "removing defendant must show that, after resolving all issues of *fact and law* in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant." *Morris*, 718 F.3d at 666 (emphasis in original) (cleaned up). Joinder is fraudulent when "the out-of-state defendant can show there exists no reasonable probability that a state court would rule against the [in-state] defendant." *Schwartz v. State Farm Mut. Auto. Ins. Co.*, 174 F.3d 875, 878 (7th Cir. 1999) (cleaned up). A defendant bears a heavy burden to establish fraudulent joinder. *Schur*, 577 F.3d at 764. The standard of review applied to fraudulent joinder "is even more favorable to the non-movant than the standard for ruling on a motion to dismiss under Rule 12(b)(6)." *Thornton v. Hamilton Sundstrand Corp.*, 121 F. Supp. 3d 819, 826 (N.D. Ill. 2014), *aff'd sub nom. Thornton v. M7 Aerospace LP*, 796 F.3d 757 (7th Cir. 2015) (cleaned up); *Schur*, 577 F.3d at 764 (same). Courts look "only to determine whether the claims against the nondiverse defendant are wholly insubstantial and frivolous. The question is whether defendants have shown that plaintiff could not state a claim against the nondiverse defendants not whether plaintiff has stated a claim against them." *Alvarez v. Techalloy Co., Inc.*, 2022 WL 970568, at *1 (N.D. Ill. Mar. 31, 2022) (cleaned up).

Before addressing whether Cleveland Cliffs has met its heavy burden of establishing fraudulent joinder, the Court must address a preliminary issue lodged by Valles.

9

### A. Piercing the Pleadings

Valles argues that Cleveland-Cliffs' Notice of Removal impermissibly relies upon affidavits and other materials challenging the allegations of the complaint. Mot. Remand ¶ 18. A defendant, Valles asserts, may not pre-try liability issues in the context of claims of fraudulent joinder. *Id.* (citing *Momans v. St. John's Northwestern Military Academy*, 2000 WL 33976543, *4 (N.D. Ill. Apr. 20, 2000); *Hauck v. ConocoPhillips, Co.*, 2006 WL 1596826, *5–6 (S.D. Ill. June 6, 2006)).

Predictably, Cleveland-Cliffs disagrees and maintains that in the context of fraudulent joinder, "this Court must consider the facts of the case . . . and that involves an inquiry into summary judgment-style evidence." R. 16, Resp. at 9 (citing *Rutherford v. Merck & Co, Inc.*, 428 F. Supp. 2d 842, 847 (S.D. Ill. 2006)). Affidavits, insists Cleveland-Cliffs, are permissible forms of evidence that may be submitted in resolving questions of fraudulent joinder. Resp. at 9. Thus, Cleveland-Cliffs urges the Court to consider the affidavits of Pleasant (Not. Removal, Exh. D, Pleasant Aff.), Nick McNinch (Not. Removal, Exh. E, McNinch Aff.), and Matthew Chabes (Not. Removal, Exh. 6, Chabes Aff.), as well as the Cleveland-Cliffs-Phoenix service contract (Not. Removal, Exh. F, Serv. Contract) in its fraudulent joinder analysis.

In evaluating a claim of fraudulent joinder, a court may in some circumstances "pierce the pleadings and consider summary judgment-type evidence such as affidavits and deposition testimony[; therefore,]. . . a limited use of affidavits and other evidence is permissible so long as the evidence is not used to pre-try the case." *Peters v. AMR Corp.*, 1995 WL 358843, *3 (N.D. Ill. June 13, 1995) (cleaned up); *see*

*Elrod v. Bayer Corp.*, 2020 WL 4284416, *2 (N.D. Ill. July 27, 2020) (same). A summary judgment-like inquiry is permissible when it presents the court with "jurisdictional facts establishing the propriety of summarily dismissing the defendant, not with evidence going to the merits of Plaintiffs' claim." *Momans*, 2000 WL 33976543, at *4. If the summary judgment-like evidence "contains substantive denials of allegations and therefore goes to the merits of the case," then it would be improper at this juncture. *Id*. "In reviewing the evidence, the Court must give the benefit of factual and legal inferences to the plaintiff." *Smith v. Phillip Morris USA Inc.,* 2019 WL 4750119, *8 (N.D. Ill. Sep. 30, 2019) (cleaned up).

Cleveland-Cliffs' Notice of Removal relies upon the affidavits of Pleasant, McNinch, and Chabes. The Court addresses each affidavit in turn. In his affidavit, Chabes, Cleveland-Cliffs Operations Section Manager, attests that "Cleveland-Cliffs personnel do not have open access to Phoenix's Leased Property and therefore would have no opportunity to warn Phoenix personnel of any unsafe or dangerous conditions involved in their work on the Leased Property, and would have no opportunity to stop work Phoenix personnel might be performing on the Leased Property." Chabes Aff. ¶ 22. Chabes further states that Cleveland-Cliffs personnel is not involved in supervising or inspecting Phoenix's work on the property leased by Phoenix, including the work being done at the time of Valles' incident. *Id.* ¶ 20. This affidavit, however, does not go to any jurisdictional issue. On the contrary, the affidavit goes to the merits of the case, namely that Cleveland-Cliffs is not liable for the incident. Therefore, the Court will not consider the affidavit in its fraudulent joinder analysis.

11

Next up is the affidavit of McNinch, Cleveland-Cliffs Health, Safety and Security Manager. McNinch states that he has a team of safety representatives working underneath him, including Pleasant. McNinch Aff. ¶¶ 4–5. "While safety representatives," according to McNinch, "help the various departments implement general safety provisions, . . . [they] do not dictate or enforce the specific safety policies each department may need to operate safely." *Id.* ¶ 7. McNinch submits that "[t]he department-specific safety policies are created and enforced by department managers and their teams, not safety representatives." *Id.* ¶ 8. McNinch attests that Pleasant has no authority related to safety policies for Cleveland-Cliffs, except for the space and gas hazard program, *id.* ¶ 9, and that Pleasant was not assigned any responsibilities with respect to Phoenix's services work in slag recovery, *id.* ¶ 12. However, the McNinch affidavit also states that at the time of Valles' injuries, Pleasant was assigned by the safety department to monitor the work performed by the Plant's primary operations and "make sure that department follows the procedures that have already been developed." *Id.* ¶ 11. The Court finds that it may consider the McNinch affidavit in its fraudulent joinder analysis, as that affidavit does not go the merits, but rather the jurisdictional issue before the Court.

The Court now turns to Pleasant's affidavit. Pleasant states that he is a safety representative for Cleveland-Cliffs. Pleasant Aff. ¶ 1. Notably, Pleasant fails to describe his duties as a safety representative. Pleasant further states that he was not involved with Phoenix's operations at the Plant and was not responsible for coordinating safety training for Phoenix. *Id.* ¶¶ 3–4. He further attests that he had

12

limited involvement with the Occupational Safety and Health Administration (OSHA) inspection following Valles' injury. *Id.* ¶ 9. This involvement, according to Pleasant, "was confined to attending the opening conference and driving an OSHA representative to Phoenix's offices during the OSHA inspection." *Id.* ¶ 9. The Court finds that it may consider the Pleasant affidavit in its fraudulent joinder analysis, as it does contain statements that go to the jurisdictional issues before the Court.

Cleveland-Cliffs also submitted the service contract with its Notice of Removal, in support of its contention that Cleveland-Cliffs provides Phoenix with access to Cleveland-Cliffs' operations, allowing Phoenix employees to come to Cleveland-Cliffs' staging area but not allowing Cleveland-Cliffs' employees to come to the Leased Property. Serv. Contract. This Service Contract, however, does not address any jurisdictional issue. Instead, it goes to the merits of the action. Therefore, the Court will not consider the Service Contract in its fraudulent joinder analysis.

The Court having addressed the summary judgement-like evidence it may consider in its fraudulent joinder analysis, now turns to the law that will govern that analysis.

### B. Choice of Law

Cleveland-Cliffs argues in its Notice of Removal that Indiana law applies in this case and that under Indiana law, Valles' claims against Pleasant stand no chance of success because Pleasant owed Valles no duty. Not. Removal ¶¶ 47–70, 78. In his Motion to Remand, Valles contends that Cleveland-Cliffs fails to establish any conflict between Illinois law and Indiana law and therefore, a choice of law analysis

is unnecessary. Mot. Remand ¶ 53. Under Illinois law, asserts Valles, there is a reasonable possibility of liability against Pleasant and therefore, no fraudulent joinder exists and the Motion to Remand should be granted. R. 24, Reply at 8–9. The Court agrees with Valles.

"When a federal court sits in diversity, . . . [the court] look[s] to the choice-of-law rules of the forum state to determine which state's law applies" to the issues before it. *Sosa v. Onfido, Inc.*, 8 F. 4th 631, 637 (7th Cir. 2021). "Under Illinois choice-of-law rules, forum law is applied unless an actual conflict with another state's law is shown, or the parties agree that forum law does not apply." *Id.* (cleaned up). The "party seeking the choice-of-law determination bears the burden of demonstrating a conflict, *i.e.*, that there exists a difference in the law that will make a difference in the outcome." *Bridgeview Health Care Ctr., Ltd. v. State Farm Fire & Cas. Co.*, 10 N.E.3d 902, 909 (Ill. 2014). "Once a conflict between laws is established, the analysis turns to which law should be applied." *Id.*

The Seventh Circuit has held that "choice of law decisions can be made as part of the fraudulent joinder analysis where the choice of law decision is dispositive to the outcome, and where the removing defendant bears the same heavy burden to make the choice of law showing." *Morris*, 718 F.3d at 672. Here, Cleveland-Cliffs is seeking to apply not the law of the forum state, Illinois, but that of Indiana. As such, Cleveland-Cliffs is tasked with showing an outcome determinative conflict between Illinois law and Indiana law. But, as Valles points out, Cleveland-Cliffs fails to carry this burden. Mot. Remand ¶ 54. Neither the Notice of Removal nor the Response to

the Motion to Remand identifies any conflict between Illinois and Indiana law that will affect the outcome of the case. In a perfunctory stab at establishing a conflict, in its Notice of Removal, Cleveland-Cliff asserts, without citation to any authority, that "a choice of law analysis needs to occur as Illinois and Indiana law has conflicts of law with respect to the duties a landowner owes to independent contractors." Not. Removal ¶ 47. But saying it is so, does not make it so. Instead, assuming that a conflict exists, Cleveland-Cliffs launches into an extensive analysis as to why Indiana and not Illinois law applies. But Cleveland-Cliffs missed a critical step. Before undertaking this analysis, Cleveland-Cliffs must identify an outcome determinative conflict between Illinois and Indiana law. Since Cleveland-Cliffs has failed to advance any developed argument as to a conflict between Illinois and Indiana law, it has not met its burden and the Court will apply the law of the forum state, Illinois. *See Sosa*, 8 F.4th at 634; *Bridgeview Health Care Ctr.*, 10 N.E.3d at 905.

### C. Fraudulent Joinder Under Illinois Law

The Court's analysis must begin by determining the reasonable possibility of success of Valles' claims against Cleveland-Cliffs contests are fraudulently joined: the negligence claim against Pleasant. "[A] district court must turn to state law to determine whether the plaintiff has any reasonable possibility of success." *Schur*, 577 F.3d at 764. "To state a cause of action for negligence [in Illinois], a complaint must allege facts that establish the existence of a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach." *Marshall v. Burger King Corp.*, 856 N.E.2d 1048, 1053 (Ill. 2006). Further, under

15

Illinois law "every person owes a duty of ordinary care to all others to guard against injuries which naturally flow as a reasonably probable and foreseeable consequence of an act, and such a duty does not depend upon contract, privity of interest or the proximity of relationship, but extends to remote and unknown persons." *Schur*, 577 F.3d at 766 (quoting *Widlowski v. Durkee Foods, Div. of SCM Corp.*, 562 N.E.2d 967, 968 (Ill. 1990)). "A duty to warn exists where there is unequal knowledge, actual or constructive, of a dangerous condition, and the defendant who possesses this knowledge knows or should know that harm might or could occur if no warning is given." *Hutchinson v. Fitzgerald Equip. Co.*, 910 F.3d 1016, 1022 (7th Cir. 2018) (cleaned up). "In an Illinois negligence action, the duty to warn co-exists with the corresponding liability for the hazard if no warning is given." *Harper v. Weston Sols., Inc.*, 2022 WL 1102019 at *9 (W.D. Ill. April 13, 2022) (cleaned up).

Under Illinois law, an agent can be individually liable "in tort to a third party harmed by the agent's conduct when the agent breaches an independent duty that she owes *to the third party*." *Schur*, 577 F.3d at 766 (emphasis in original) (citing *Bovan v. Am. Fam. Life Ins. Co.*, 897 N.E.2d 288, 295 (Ill. App. Ct. 2008). In effect, "an employee may be liable to third parties for the employee's own negligence for a failure to use reasonable care for his acts or omissions in the course of his employment which injure third parties." *Alvarez*, 2022 WL 970568 at *3.

Cleveland-Cliffs argues that Valles has no possibility of success against Pleasant under Illinois law because, as an agent of Cleveland-Cliffs, Pleasant did not owe Valles any independent duty. Resp. at 16. Cleveland-Cliffs cites two cases, *Roh*

*v. Starbucks Corp.*, 2015 WL 232374 (N.D. Ill. Jan. 14, 2015) and *Ramos v. Casey's General Stores, Inc.*, 2022 WL 4463275 (S.D. Ill. Sept. 26, 2022), in support of that proposition. Both cases are distinguishable.

In *Roh*, 2015 WL 232374, the court, relying on *Hoidas v. Wal-Mart Stores, Inc.*, 2010 WL 1790864 (N.D. Ill. Apr. 30, 2010), found that the manager and employee of a Starbuck's store where plaintiff's minor son was injured were fraudulently joined. 2015 WL 232374, at *1–2. Starting with the manager, the court noted that the "law of agency does not impute a duty that the principal owes to a third party onto an agent." *Id.* at *1. The court found that the manager had no duty to the plaintiff where the complaint only alleged that the store manager "was responsible for overseeing the safety, maintenance, and operations of the area where . . . [the] accident occurred." *Id* at *1. In other words, the court found no suggestion of an independent duty owed to the plaintiff. Same for the store employee, as there were no allegations that the employee caused or actively contributed to the incident. *Id.* at *2.

In *Ramos*, a slip and fall case, the court denied the plaintiff's motion to remand, finding that the plaintiff had fraudulently joined a non-diverse store employee. 2022 WL 4463275, at *1, *3. The plaintiff alleged that the employee was liable because he "possessed, operated, managed, maintained and controlled or had a duty to possess, operate, manage, maintain and control the premises" and "invited the public onto the premises" while "carelessly and negligently caused and permitted the premises to become and remain in a dangerous condition for persons using said premises, especially patrons." *Id.* at *3. Similarly to *Roh*, the court found that,

17

because the plaintiff did not allege that the employee "caused the incident or actively contributed to the act which caused the incident," the employee only owed a to the employer, not to third parties like the plaintiff. *Id*.

Here, unlike *Roh* and *Ramos*, Valles alleges a breach of duty by Pleasant owed to the employer *and* a third-party. In the FAC, Valles alleges that employees and contractors at the Plant transport "molten slag" or steel byproduct, and "blow down" and/or "bottom wash" slag, which can be highly explosive. FAC ¶ 20. Pleasant was a safety engineer at the Plant. *Id*. ¶ 13. As safety engineer, Pleasant was responsible for the operation, maintenance, and control of the Plant, which includes implementing safety standards and coordinating safety training for Phoenix employees. *Id*. ¶¶ 15–16, 19. Valles alleges that Pleasant, as a safety engineer "knew or should have known that slag coming into contact with water could cause an explosion." *Id*. ¶ 23. Valles states that Pleasant had a duty "to exercise reasonable care in the operation, maintenance, and control of the aforementioned steel plant production, including the provision of safe conditions for Plaintiff [Valles] and others then and there working at the aforementioned premises." *Id*. ¶ 24.

True, the McNinch affidavit challenges some of these allegations. For example, according to McNinch, while "safety representatives[,] help the various departments implement several safety provisions, . . . [they] do not dictate or enforce the specific safety policies each department may need to operate safely." McNinch Aff. ¶ 7. "The department-specific safety policies," submits McNinch, "are created and enforced by department managers and their teams, not safety representatives." *Id*. ¶ 8. Pleasant,

18

attests McNinch, has no authority related to safety policies for Cleveland-Cliffs, except for the space and gas hazard program. *Id*. ¶ 9. Pleasant, submits McNinch, was not assigned any responsibilities with respect to Phoenix's services work in slag recovery. *Id*. ¶ 12. However, the McNinch affidavit also states that at the time of Valles' injuries, Pleasant was assigned by the safety department to monitor the work performed by the Plant's primary operations and to "make sure that department follows the procedures that have already been developed." *Id*. ¶ 11. As stated above, when determining whether a removing defendant has established fraudulent joinder, the Court must resolve "all issues of *fact and law* in favor of the plaintiff." *Morris*, 718 F.3d at 666 (emphasis in original) (cleaned up). At this stage, the Court therefore must resolve these conflicting facts in favor of Valles.

The Pleasant affidavit also fails to carry the day for Cleveland-Cliffs. Pleasant states that he is a safety representative for Cleveland-Cliffs. Pleasant Aff. ¶ 1. Pleasant further states that he was not involved with Phoenix's operations at the Plant and was not responsible for coordinating safety training for Phoenix. *Id*. ¶¶ 3–4. Yet Pleasant attests that he had limited involvement with the OSHA inspection following Valles' injury. *Id*. ¶ 9. This involvement, according to Pleasant, was confined to attending the "opening conference and driving an OSHA representative to Phoenix's offices during the OSHA inspection." *Id*. The Pleasant affidavit leaves some questions unanswered. While Pleasant states that he is a safety representative, Pleasant fails to detail his duties as a safety representative or the relevance of the OSHA's inspection following the incident. The Court must ask, if Pleasant had no

19

safety responsibilities over the area involved in the incident, why was he tasked by Cleveland-Cliffs as the person to attend OSHA's opening conference regarding the incident? Again, these are questions that the Court cannot resolve on a motion to remand.

Valles relies on *Hauck v. ConocoPhillips Co.*, 2006 WL 1596826 (S.D. Ill. June 6, 2006), to support his proposition that he has alleged an independent duty owed by Pleasant to Valles. Mot. Remand ¶ 45. In *Hauck*, the plaintiff brought an action against the owner of a refinery and its safety manager, who was responsible for overseeing safety measures, after the plaintiff was injured in a slip and fall incident at the refinery. *Hauck*, 2006 WL 1596826, at *1. The defendants removed the case to federal court claiming fraudulent joinder, and plaintiff moved to remand. *Id* at *1–*2. The district court, applying Illinois law, found no fraudulent joinder. *Id*. at *9. The court began by reciting the general rule that "a person is not absolved of personal liability to a third person on account of negligence or other wrongful act merely because at the time he was acting as an employee within the scope of employment." *Id*. at *2 (cleaned up). The court also observed that under the Restatement (Second) of Agency § 352, which Illinois has adopted, "an agent is not liable for harm to a person other than his principal because of his failure to perform his duties to his principal, unless physical harm results from reliance upon performance of the duties by the agent." *Id*. at *3 (cleaned up). Turning to the complaint, the court noted that the plaintiff alleged that the refinery entrusted responsibility for safety to the defendant safety manager and that the complaint's allegations supported the

20

inference that third parties, such as the plaintiff, would rely on the safety manager to perform his duty, and that the safety manager's failure to do so was a proximate cause of the plaintiff's injuries. *Id.* at *4. Cleveland-Cliffs did not address *Hauck* in its Response. No matter, as the Court finds *Hauck* supports this Court's conclusion of no fraudulent joinder.

Here, Pleasant, like the defendant-employee in *Hauck* is alleged to specifically be in charge of safety at a site where dangerous activities (requiring an employee to be responsible for safety) occur. The FAC, like the complaint in *Hauck*, alleges that Pleasant owed a duty to third-parties in the discharge of those duties and Pleasant failed to perform said duties. *See* FAC ¶¶ 25–26. *Ramos* and *Roh*, on the other hand, did not involve any independent duty owed to third parties by the fraudulently joined defendant. The Court agrees with Valles that, like in *Hauck*, there is a reasonable possibility that an Illinois court could find Pleasant had an independent duty to Valles.

The Court finds that Defendants Cleveland-Cliffs and Pleasant have not met the heavy burden required to establish fraudulent joinder, thereby depriving the Court of subject matter jurisdiction over this case. Valle's Motion to Remand to the Circuit Court of Cook County, Illinois is hereby granted.

The Court now turns to Valles' Motion for Fees.

## III. Attorneys' Fees

Valles also moves the Court to order Cleveland-Cliffs to pay all costs and fees incurred as a result of the removal action. Mot. Fees. 28 U.S.C. § 1447(c) permits

recovery of "costs and any actual expenses, including attorney fees, incurred as a result of the removal." *Id.*; *see also*, *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 132 (2005). "An award of fees and costs is discretionary with the court." *Castellanos v. U.S. Long Distance Corp.*, 928 F. Supp. 753, 756–57 (N.D. Ill. 1996) (cleaned up). Section § 1447(c) "is *not* a sanctions rule; it is a fee-shifting statue, entitling the district court to make whole the victorious party." *Garbie v. DaimlerChrysler Corp.*, 211 F.3d 407, 410 (7th Cir. 2000). "Because § 1447(c) is a fee-shifting statute, the plaintiffs as prevailing parties are presumptively entitled to recover the attorneys' fees incurred in defending their award." *Id.* at 411.

The Supreme Court has held that a court may only order the payment of all fees and costs resulting from the removal when "the removing party lacked an objectively reasonable basis for seeking removal." *Martin*, 546 U.S. at 141. In ascertaining whether to impose fees, the court may determine whether "removal was unjustified under settled law," *Garbie*, 211 F.3d at 410, as well as the case's complexity, *Katonah v. USAir, Inc.*, 876 F. Supp. 984, 990 (N.D. Ill. 1995) ("One factor to consider in assessing the propriety of removal is the complexity of the case.").

Valles argues that the underlying questions at issue in the case are settled law and directs the Court to two fraudulent joinder cases that are analogous to this case: *Alvarez v. Techalloy Co.*, 2022 WL 970568 (N.D.Ill. Mar. 31, 2022) and *Swimline v. ArcelorMittal Indiana Harbor, LLC*, 2015 WL 1534452 (N.D. Ind. April 2, 2015). Cleveland-Cliffs, of course, argues that this case is distinguishable from *Alvarez* and *Swimline* citing the procedural history of the cases and use of summary judgment-

22

like evidence. R. 14, Resp. Mot. Fees. ¶¶ 2–3. The Court agrees with Cleveland-Cliffs. In both cases, the plaintiffs brought a negligence action against a defendant chemical plant company and individual employees for injuries stemming from plant activities. Defendants removed the case to federal court under diversity jurisdiction citing fraudulent joinder and plaintiff moved to remand the case back to state court. The courts agreed with the plaintiffs finding that the individual defendant employees, under Illinois law, could owe an independent duty to the plaintiff, thereby rejecting the defendants' fraudulent joinder argument and remanding the case back to state court. However, unlike the case here, the courts did not need to engage in a choice of law analysis or evaluate the use of summary judgement-like evidence in its fraudulent joinder analysis.

Valles also raises the point that Cleveland-Cliffs' counsel was involved in the *Alvarez* and *Swimline* litigation. Mot. Fees. ¶ 14. The Seventh Circuit has emphatically stated the test for reasonableness is objective, rather than subjective. *See Lott v. Pfizer, Inc.*, 492 F.3d 789, 794 (7th Cir. 2007). District courts, as a result, should determine "whether the relevant case law clearly foreclosed the defendant's basis of removal, not whether the defendant had some special insight into the legislative process." *Id*. Therefore, the Court will not consider Cleveland-Cliffs' counsel's involvement in or knowledge of *Alvarez* and *Swimline*, as it relates to whether Valles is entitled to the costs, expenses, and attorneys fees.

The Court finds that the issues related to choice of law are complex and an objectively reasonable basis for removal. Before the Court could decide fraudulent

joinder, the law governing the case had to be determined and whether a choice of law analysis was required to determine the law governing the case. None of the cases cited in the Motion for Fees included a choice of law analysis. Moreover, the Court had to determine which summary judgment-type evidence it could consider, and the Court's evaluation of allegations and affidavits supporting Pleasant's duty to Valles and others was not one-sided in Valles' favor.

The Court, in the exercise of its discretion, concludes an award pursuant to 28 U.S.C. § 1447(c) is not appropriate in this case. Valles has not provided evidence that this case was removed for the purpose of prolonging litigation or increasing Valles's costs in litigating the case. Although the Court ultimately found unpersuasive the arguments and evidence advanced by Cleveland-Cliffs in support of removal, the removal was not objectively unreasonable. The Court denies Valles' Motion for Fees.

## Conclusion

For the foregoing reasons, the Court grants Valles' Motion to Remand, R. 9, and denies Valles' Motion for Costs, Expenses, and Attorneys Fees, R. 10. The Clerk's Office is directed to remand this case to the Circuit Court of Cook County, Illinois immediately. This civil case is terminated.

Dated: August 4, 2023

Franklin U. Valderrama
United States District Judge

24